## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WILLIAM DECOLOGERO, | ) | |
| | ) | |
| Plaintiff/Defendant-in-Counterclaim, | ) | |
| | ) | |
| v. | ) | |
| | ) | **CIVIL ACTION NO: 11613 REK** |
| HARTFORD LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant/Plaintiff-in-Counterclaim. | ) | |

### HARTFORD LIFE INSURANCE COMPANY'S COUNTERCLAIM AGAINST WILLIAM DECOLOGERO

Defendant/Plaintiff-in-Counterclaim, Hartford Life Insurance Company (hereinafter "The Hartford"), alleges the following against Plaintiff/Defendant-in-Counterclaim, William DeCologero:

### JURISDICTION

1.      Defendant/Plaintiff-in-Counterclaim, The Hartford, is a corporation that has its principle place of business in Hartford, Connecticut and is authorized to engage in insurance business in the Commonwealth of Massachusetts.

2.      Upon information and belief, Plaintiff/Defendant-in-Counterclaim, William DeCologero, is a citizen of the Commonwealth of Massachusetts residing at 26 Chapin Avenue, North Andover, Massachusetts.

3.      Jurisdiction is proper in this Court as it is in response to a suit the Plaintiff/Defendant-in-

1

Counterclaim filed in this Court.

## **GENERAL ALLEGATIONS**

4.    The Hartford issued a disability policy of insurance to the Trustees of the Educational
      Profession of America Group Insurance Trust under Policy number 83AGP005062,
      subject to Forms and Riders, for the policy period from December 1, 1999 to the
      anniversary date of December 1st of each year beginning in the year 2000 (hereinafter
      "the Policy.")

5.    The Plaintiff/Defendant-in-Counterclaim alleges in his Complaint that during the Policy
      effective dates, Tony D Italian Steak House was a holder of the Policy as it was a member
      of the Trustees of the Educational Profession of America Group Insurance Trust.

6.    The Plaintiff/Defendant-in-Counterclaim alleges in his Complaint that the
      Plaintiff/Defendant-in-Counterclaim was employed with Tony D Italian Steak House
      during the Policy effective dates and, therefore, claims he was an Eligible Person for
      disability benefits as defined by the Policy.

7.    The Plaintiff/Defendant-in-Counterclaim alleges in his Complaint that on or about May
      17, 2000, the Plaintiff/Defendant-in-Counterclaim claims he injured himself while
      performing his duties as an employee of Tony D Italian Steak House.

8.    On May 30, 2000, the Plaintiff/Defendant-in-Counterclaim submitted to The Hartford an
      Initial Claim for Total Disability Benefits ("LTD Benefits.")

9.    The Plaintiff/Defendant-in-Counterclaim alleges in his Complaint, on or about August
      16, 2000, the Plaintiff/Defendant-in-Counterclaim was notified by The Hartford that his
      claim for disability benefits was approved.

- 2 -

10.     Upon completion of a comprehensive review of the information contained in the
        Plaintiff/Defendant-in-Counterclaim's claim file, The Hartford determined that the
        evidence in the claim file did not establish that the Plaintiff/Defendant-in-Counterclaim
        met the Policy's definition of "Total Disability" on or after September 21, 2000.

11.     As a result, on August 20, 2001, The Hartford determined that pursuant to the terms and
        conditions of the Policy, LTD benefits were no longer payable to the Plaintiff/Defendant-
        in-Counterclaim and, therefore, terminated his claim effective September 21, 2000.

12.     On August 20, 2001, The Hartford notified the Plaintiff/Defendant-in-Counterclaim that
        his claim for LTD benefits under the Policy was terminated effective September 21, 2000.

13.     Due to the fact that The Hartford paid benefits to the Plaintiff/Defendant-in-Counterclaim
        after September 21, 2000, an overpayment in the amount of $31,000.00 was paid by The
        Hartford to the Plaintiff.

14.     On August 20, 2001, The Hartford notified the Plaintiff/Defendant-in-Counterclaim that
        an overpayment of $31,000.00 occurred and explained the overpayment as follows:

"$3,000.00………………………………………………….Net Monthly LTD Benefits

| DATE OF BENEFIT | | | BENEFIT PAID |
|---|---|---|---|
| 09/21/00 – 090/30/00 | ($3,000.00/30 days x 10 days) | $ | 1,000.00 |
| 10/01/00 – 07/31/01 | ($3,000.00/30 days x 10 months) | | 30,000.00 |
| | | | |
| TOTAL Disability Benefit Paid | (09/21/00 – 07/31/01) | | $31,000.00 |
| TOTAL SHOULD HAVE PAID | (09/21/00 – 07/31/01) | | 0.00 |
| TOTAL OVERPAID | (09/21/00 – 07/31/01) | | $31,000.00" |

(See August 20, 2001 correspondence from Kim Gabrielsen, Senior Investigative
Analyst, Special Investigations Unit – Group Benefits Division, Hartford Life Insurance
Company, a copy of which is attached hereto and marked as "Exhibit 1").

- 3 -

15. On August 20, 2001, The Hartford requested the Plaintiff/Defendant-in-Counterclaim to forward a check or money order in the amount of $31,000.00 for full reimbursement of the overpayment.

16. To date, the Plaintiff/Defendant-in-Counterclaim has failed to reimburse The Hartford for the $31,000.00 overpayment.

## COUNT I

### (Breach of Contract)

17. The Hartford incorporates by reference Paragraphs 1 through 16 of this Counterclaim as if fully set forth herein.

18. On or about December 1, 1999, the Hartford entered into a contract with the Trustees of the Educational Profession of America Group Insurance Trust with respect to The Hartford providing disability benefits to its members, pursuant to the terms and conditions of Policy, in consideration for the payment of premiums.

19. Upon information and belief, and based upon Plaintiff's Complaint, the Plaintiff/Defendant-in-Counterclaim was an Eligible Person for disability benefits as defined by the Policy, and, therefore, was bound by the terms and conditions of the Policy.

20. The Plaintiff/Defendant-in-Counterclaim breached the terms and conditions of the Policy by failing to meet the definition of "Total Disability" on or after September 21, 2000 while still collecting disability benefits under the Policy.

21. The Plaintiff/Defendant-in-Counterclaim breached its contract with The Hartford by causing it to lose $31,000.00 in disability overpayments.

- 4 -

22.    The Hartford has performed all of the terms and conditions of its disability insurance
       contract with the Plaintiff/Defendant-in-Counterclaim.

       *WHEREFORE*, the Defendant/Plaintiff-in-Counterclaim, Hartford Life Insurance

Company respectfully requests that the Court grant judgment in its favor against

Plaintiff/Defendant-in-Counterclaim in the amount of $31,000.00, together with interest,

attorneys' fees, costs of suit and what other relief this Court deems just and proper.

## COUNT II

### (Conversion)

23.    The Hartford incorporates by reference Paragraphs 1 through 23 of this Counterclaim as if
       fully set forth herein.

24.    The Plaintiff/Defendant-in-Counterclaim obtained possession of $31,000.00 that was the
       property of The Hartford.

25.    The Hartford made demand in writing on the Plaintiff/Defendant-in-Counterclaim for the
       return of the $31,000.00.

26.    The Plaintiff/Defendant-in-Counterclaim has wrongly refused or otherwise failed to
       return the $31,000.00 that belongs to The Hartford.

       *WHEREFORE*, the Defendant/Plaintiff-in-Counterclaim, Hartford Life Insurance

Company respectfully requests that the Court grant judgment in its favor against

Plaintiff/Defendant-in-Counterclaim in the amount of $31,000.00, together with interest, attorney

fees, costs of suit and what other relief this Court deems just and proper.

- 5 -

## COUNT III

### (Unjust Enrichment)

27.   The Hartford incorporates by reference Paragraphs 1 through 26 of this Counterclaim as if fully set forth herein.

28.   The Plaintiff/Defendant-in-Counterclaim has befitted from and accepted money in the amount of $31,000.00, for which he gave no consideration.

29.   The Hartford made demand in writing on Plaintiff/Defendant-in-Counterclaim for return of the $31,000.00.

30.   Plaintiff/Defendant-in-Counterclaim has failed to return the $31,000.00 he incorrectly received and has thereby been unjustly enriched.

31.   Plaintiff/Defendant-in-Counterclaim retains amounts requested by The Hartford that it is equitably entitled to be paid.

   *WHEREFORE*, the Defendant/Plaintiff-in-Counterclaim, Hartford Life Insurance

Company respectfully requests that the Court grant judgment in its favor against

Plaintiff/Defendant-in-Counterclaim in the amount of $31,000.00, together with interest, attorney

fees, costs of suit and what other relief this Court deems just and proper.

>   Defendant,
>   Hartford Life
>   Insurance Company,
>   By It's Attorneys,

*Nadine M. Bailey*

James J. Ciapciak, BBO #: 552328
Nadine M. Bailey, BBO # 644493
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA 02062
Tel: (781) 255-7401
Fax: (781) 255-7401

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document was served upon Counsel of Record on December 20, 2005.

*Nadine M. Bailey*

Nadine M. Bailey

- 7 -

# Exhibit 1

August 20, 2001

William Decologero
26 Chapin Road
North Andover, MA 01845

Policyholder: Trustees Of The Educational Profession Of America Group Ins
Policy No.:    83AGP005062
Insured:       William Decologero
SSN:           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

Dear Mr. Decologero:

We are writing to you regarding your claim for Disability benefits under the association insurance policy number 83AGP005062. This policy funds Trustees of The Educational Profession Of America Group Ins Disability Employee Benefits Plan.

Upon completion of a comprehensive review of the information contained in your claim file, viewed in its entirety, it has been determined that the evidence in your file in support of your claim does not establish that you met the Policy's definition of Total Disability on or after 09/21/00. Accordingly, benefits are no longer payable to you under the terms of the Policy and your claim has been terminated as of 09/21/00. Because benefits were paid after 09/21/00, an overpayment has occurred in the amount of $31,000.00. An explanation of how this overpayment occurred will follow in this letter.

Please refer to page 20 of your policy where it defines Total Disability:

" **Total Disability:**

With respect to Plans with a Maximum Benefit Period of one year, Total Disability means disability which wholly and continuously prevents an Insured Person from performing the substantial and material duties of his or her usual occupation.

With respect to Plans with a Maximum Benefit Period of two or more years, Total Disability means disability which:

a) during the Waiting Period and the first 24 months during which Total Disability Benefits are payable, wholly and continuously prevents an Insured Person from performing the substantial and material duties of his or her usual occupation; and
b) thereafter wholly and continuously prevents an Insured Person from engaging in any and every occupation or employment for which he or she is reasonably suited by training, education or experience."

We based our decision to terminate benefits upon Policy language and all documents contained in your file, viewed as a whole, including the following specific information:

03032

1) Initial Claim for Total Disability Benefits completed by you and signed on 05/30/00.
2) Verification of coverage by Seabury and Smith (formerly Albert H. Wohler & Co.) dated 06/20/00.
3) Attending Physician Statement completed by Dr. Paul Weinstein on 06/26/00.
4) Medical records from Dr. Paul Weinstein dating from 05/22/00 through 01/23/01.
5) Copy of medical records from Dr. Onaly Kapasi dating from 01/31/01 through 05/02/01.
6) Copy of Independent Medical Examination (IME) report done 10/27/00 and received from Atlantic Charter Insurance Company on 07/17/01.
7) Copy of a job description for a Restaurant Manager from the Dictionary of Occupational Titles.
8) Claimant questionnaire and Other Income Questionnaire completed and signed by you on 04/13/01.
9) A copy of your Detailed Earnings Report from Social Security Administration.
10) Employment verification and payroll information from J.L. Marshall & Sons, Inc dated 06/07/01.
11) Corporate Documents for Two Essex Street Inc. signed by you on 10/27/99 and listing you as Treasurer0.21 and Director of the corporation.
12) Interview with Hartford Life Insurance's Investigator William Moryto conducted 08/10/01 and a statement signed by you.
13) Surveillance report and video from our representative surveillance vendor Factfinder Investigations on 06/29/01 and 06/30/01.

Your claim file reflects that you stopped working as a Restaurant Manager of Tony D's Italian Restaurant on 05/17/00 as a result of a disability caused by a left knee and left shoulder strain. Accordingly, pursuant to the Policy's definition of Total Disability, you became entitled to Total Disability benefits as you were prevented from performing the substantial and material duties of your usual occupation.

Dr. Paul Weinstein first treated you on 05/22/00 at which time his impression was that you sustained a cervical strain, thoracic strain, lumbar strain, strain/contusion left shoulder and a strain/contusion left knee. You were treated with Anaprox and Vicodin for the pain. On 8/15/00, you continued to complain of pain in your left shoulder and left knee. In view of the fact that you had continued pain, an MRI of your left shoulder was ordered to rule out any internal derangements.

The MRI of your left shoulder done 10/12/00 demonstrated: "no joint effusion or fluid within the subacromial/subdeltoid bursa. There is ill-defined increased signal in the midportion of the supraspinatus tendon on both the T1, protein density and T2 images. No frank tear of the supraspinatous tendon is demonstrated. The glenohumeral joint and labral anatomy appear intact. Marrow signal about the shoulder appears intact. Impression: Findings most consistent with a partial tear of the supraspinatus tendon without demonstration of a complete tear." Based on this report, you were referred to Dr. Kopasi for an orthopedic consult on 11/20/00.

Dr. Onaly Kapasi recommended that you have arthroscopic shoulder evaluation and Neer Achromioplasty with repair of the Rotator Cuff. He further advised that this was considered elective surgery and would required pre-approval by your insurance company. To date, you have not had any surgery done on your left shoulder or on your left knee.

We received a copy of an Independent Medical Examination done on 10/27/00 by Mordecai Berkowitz (Orthopedic Surgeon) from your worker's compensation carrier Atlantic Charter. Dr. Berkowitz noted that he also evaluated you on 06/27/00.

00033

When Dr. Berkowitz first examined you on 6/27/00, he felt you were capable of working full time in a modified capacity with lifting up to 5 pounds frequently and 10-15 pounds on occasion. He further estimated that you could return to your regular work without restriction within two weeks from that examination.

After examining you again on 10/27/00, Dr. Berkowitz presented the following assessment: "The findings of the incomplete tear of the rotator cuff do not correspond to the claimant's symptoms and it is extremely common finding, even in active individuals. This certainly would not explain pain 24 hours a day, which has persisted without relief since May 2000. In addition, he had an inconsistent range of motion of his shoulder and an inconsistent range of motion in his knee. I am unable to appreciate any clinical objective findings in relation to the May 17, 2000 incident." His final diagnosis was: "Contusion, left shoulder (Pre-existing partial tear, rotator cuff) and a Contusion, left knee." Dr. Berkowitz felt that you had sufficient time to recover and should be capable of carrying out your regular work without restriction.

We obtained a copy of a job description for a Restaurant Manger as it is performed in the national economy. This description comes from the Dictionary of Occupational Titles provided by the U.S.Department of Labor. This is considered a light occupation involving the planning, directing and coordinating activities of an organization or department that serves food and beverages. A light occupation is defined by the U.S. Department of Labor as "the ability to lift 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10lbs. Even though the weight lifted may be only negligible amount, a job is in this category when it involves sitting most of the time with a degree of pushing and pulling of arm and or leg controls, or when it requires walking and standing to a significant degree.

When asked on your Claimant Questionnaire, if you have engaged in any work activity (including self-employment) since the onset of your Disability you answered "No". On the Other Income Questionnaire, when asked to complete information pertaining to any of the following income benefits that you have received, are currently receiving or expect to receive, including wages from employment, you left the section concerning wages blank.

We obtained a copy of your Detailed Earnings Inquiry (DEQY) report from the Social Security Administration. The wage information contained in this record is part of the Federal Income Tax records that you and or employers filed with the Internal Revenue Service. According to your earnings record, you had the following earnings listed for 2000:

Two Essex Street Inc.................................$19200.00
J.L Marshall & Sons Inc............................. $1850.70

In order to determine your dates of employment and job description, we contacted J.L. Marshall & Sons Inc. who provided written confirmation on 06/07/01. We learned that you were employed as a laborer for the period of 09/21/00 through 10/06/00. You work for a total of 93 hours and earned a gross amount of $1850.70. It was further noted that you were laid off due to lack of work.

This employment information is inconsistent with your repeated representation to Hartford life that you had never resumed work in any capacity since your leave from work. It is also important to note that the position of a laborer is considered a heavy occupation requiring frequent lifting of up to 50 lbs.

During our investigation, we performed a background check including public records. We discovered that you incorporated a business on 09/27/99 known as Two Essex Street, Inc.

03034

The corporate documents are signed by you and list you as the Treasurer and Director of Two Essex Street, Inc. This business also operates the restaurant known as Tony D's Italian Steakhouse.

On 08/10/01, you met with and provided a signed statement to Investigator Frank Barre from Hartford Life Insurance Company. During this interview, you were positively identified as the person depicted in the video surveillance discussed later in this letter.

In your statement, here quoted in part, you relayed the following information:

"I have been asked to describe my disability as it exists at this present time and if it has changed in the past six months. In the past three months my condition has gotten worse. It is my left shoulder and the left knee. At this time, is causing me pain constantly. The pain is with me all of the time. I can't lift with my left arm. My knee swells up and it collapses on me. It give out. In the past six months my left knee has collapsed twice. "

"I am presently under the care of:

Dr. Paul Weinstein, of Essex St. Lawrence, MA. Last seen July 17th, will see again this week. He is my primary doctor and prescribes my pain medication.
Dr. Onaly Kapasi, orthopedic surgeon, of the Pentucket Medical Center in Haverhill, MA. Last seen June 1st or 6th, 2001.

I am taking the following prescription medications: My prescriptions are filled at the CVS in North Andover.
I take Percocet, prescribed at 40 tablets per month for pain. I would take one at night for a month, then go off them for a month.

I have been asked if I am receiving any prescribed treatments or therapies. None"

"I have been asked if I use any devices to aid in my ambulating and if any devices have been added to my home or car to aid in my ambulating
I have been asked to describe my limitations and abilities as to: I wear a knee brace all day, and take it off at night. It is a fabric Velcro brace.

Walking: I can walk for about the house, to and from my car. I can walk 10 to 15 minutes at a time. I can't mow the lawn. I can walk to go shopping for little things at the local stores.

Hand and Arm Dexterity: My left shoulder is in pain. I have torn ligaments and possibly tendon damage. My right arm and hand is okay. I am limited to what I can do with my left arm. I can lift my left arm up at the shoulder, but it is limited and causes pain. I try not to use the left arm.

Stand: I can stand for about 10 minutes at a time. It is the pressure on my left knee that prevents me from standing for long periods. If I stand or walk for too long, my left knee will most likely swell up.
Sit: My sitting is okay. I am comfortable when sitting.
Lift and Carry: I don't do any lifting with the left arm. I can carry and lift with the right hand and arm such as grocery bags, and cookware.
Reaching forward, side to side, and over my head: Reaching with my left arm is very minimal. My right arm is okay.

Pushing and pulling: I don't even attempt to use my left arm to push or pull anything such as a grocery cart. I use my right arm to push.

Climbing stairs: I can climb a flight of stairs. I live in a two-story home. I may go up and down the stairs once a day. My bedroom is on the first floor.

Enter/Exit an automobile: I drive a van. I can get in and out of it without too much of a problem.

Driving an automobile: I can drive an automobile when I have to. I drive a van with automatic transmission. I use my right arm for the driving. I drive about four times a week. I drive in town. I drive to the grocery store. I will drive my kids to where they may have to go."

"I have been asked to describe my pain and my levels of pain on a scale of (1) to (10), with the understanding a pain level 10 would require me to seek urgent medical treatment or hospitalization. I have in the left shoulder and left knee. The pain in both is about a six to seven all of the time. At night it gets a little worse, if I roll over during sleep."

"I have been asked what prevents me from returning to work at my job. It is my capability of doing the work. It is my physical ability. I was in general management of a restaurant. I had to do everything, cooking, cleaning, stocking, Management is only 5 percent. The rest of the work, is physical. I was on the floor all of the time. Restaurant work is a seventy-hour workweek.

I have been asked if I have worked, including volunteer work or self-employment activities at any time since I reported becoming disabled. I have not worked at all since becoming disabled.

I have been asked about my income.

I receive the long-term disability benefits from The Hartford Life Company.

Social Security Disability: I receive about $220 per month including the amount for my children. I have been receiving this based on an injury in 1993. My left hand was severely injured at my restaurant. I don't remember when I started receiving the Social Security. I believe it was about two years ago.

Other Disability Income: None

Pension Income: None

Any earned income: None

Any other incomes: I was in real estate until last year. I sold my last property in 1999. The properties were in my name. I bought and sold rental properties. They were multifamily homes. I owned as many as eight properties five or six years ago, including a diner in Lawrence. It was Perrault's Diner. I sold it a few years ago. At the time I sold the last of my properties, I began working at Tony D's. I was the general manager. I have been asked about my affiliation. I would put down 'Treasurer" when I signed checks. I was authorized to sign checks. I am not an officer with 2 Essex Street Inc. 2 Essex is the corporation under which, Tony D's operated. Two Essex, Inc. is still active. Tony D's closed in June 2000. My brother Joseph was the manager. Ray Doane was the owner and president. To the best of my knowledge, 2 Essex is not operating any other businesses at this time. I am not receiving any other income.

I have been asked if I have any form of income, any interest, or any investment, in any type or form of business. None

I have been asked if I have any professional licenses. My real estate license lapsed about ten years ago. I never used my license to work for a real estate firm. I only used it for the knowledge of investing into properties".

On 06/29/01 and 06/30/01 you were observed and videotaped by our representative surveillance vendor Factfinders Investigations. During the surveillance, you were observed driving your vehicles to several locations. You demonstrated the ability to enter and exit your vehicle using your left hand and arm to open and close both the van and truck door. This movement was done in a very fluid manner without any apparent signs of pain or discomfort. While driving, you backed your vehicle up and used your left arm to turn the wheel while you turned your upper body and neck in both directions. You were further observed walking back and forth to your pickup truck without any knee brace or displaying any sign of a limp. At one point, you lifted some chairs using both hands and arms above your shoulders into the back of the pickup truck with no apparent signs of discomfort or difficulty. On two occasions, you bent your knees as you bent down to look at the rear of the your vehicle. It should also be noted that you had very good muscle tone in both your upper and lower extremities with no apparent atrophy of the muscles in either your left arm or left leg.

In the investigation, we have established that you returned to work for another employer performing a job as a general laborer. During this same time, you claimed to be Totally Disabled and were receiving disability benefits. Based upon all of this information, it appears that you had and continue to have the functional ability to perform the material and substantial duties of your usual occupation.

Therefore, it is our determination that as of 09/21/00, you no longer met the Policy definition of Totally Disabled. Consequently, all benefits paid beyond 09/21/00 are overpaid. An explanation of your overpayment is as follows:

$3000.00...........................................................Net Monthly LTD Benefit

| DATE OF BENEFIT | | | BENEFIT PAID |
|---|---|---|---|
| 09/21/00 - 09/30/00 | ($3000.00/30 days X 10 days) | | $ 1000.00 |
| 10/01/00 – 07/31/01 | ($3000.00 X 10 months) | | $30,000.00 |
| TOTAL Disability Benefit PAID | | (09/21/00 - 07/31/01) | $31,000.00 |
| TOTAL SHOULD HAVE PAID | | (09/21/00 – 07/31/01) | 0.00 |
| TOTAL OVERPAID | | (09/21/00 – 07/31/01) | $31,000.00 |

Please submit your check or money order for $31,000.00 made payable to Hartford Life Insurance Company for full reimbursement of the overpayment.

In order to ensure that your payment is properly credited, please include your Social Security number on the check or money order, and mail your payment to:

The Hartford Life Companies
SRH Disability Claims
P.O. Box 2993
Hartford, CT 06104-2999

You will receive written confirmation when your reimbursement payment is processed.

03037

If you have any additional information, not previously submitted, which you believe will assist us in evaluating your claim for LTD benefits, please forward that information to us within sixty (60) days from the date of your receipt of this letter. In particular, copies of any and all business records for the business known as Two Essex Street Inc. including, but not limited to, job duties, earnings and wage records including hours worked for tax years 1999, 2000 and 2001; other financial information, including but not limited to bank records, business transactions of any kind or description, including billing, invoices or payment records of any kind, and a signed 4506 tax form for the business known as Two Essex Street, Inc. for tax years 1999 and 2000, a signed 4506 tax form for personal taxes for tax years 1997 and 1998, a signed business authorization allowing us to contact any people associated with Two Essex Street, Inc. as well as any additional medical information may assist us in further evaluating your claim for benefits. The Hartford will review any additional information you submit, along with previously submitted information, and will notify you of the results of our review.

If you do not agree with the reason why your claim was terminated, in whole or in part, and you wish to appeal our decision, you must write to us within sixty (60) days of the date of this letter. Your letter, which must be signed and dated by you or your legal representative, should clearly outline your position and any issues or comments you have in connection with your claim and our decision to terminate your request for benefits under the Policy.

Once we receive your appeal, your claim will be reviewed based upon your statements and the documents and notes contained in your claim file. Upon completion of our review, we will advise you of our further determination.

We reserve all rights and defenses available to us in making our decision.

If you have any questions, please feel free to contact our office at Toll Free (888) 232-5340. Our office hours are 8:00 AM to 4:00 PM EST, Monday through Friday. Information may be faxed to 1-860-843-4716.

Sincerely,

Kim Gabrielsen, Senior Investigative Analyst
Special Investigations Unit – Group Benefits Division
Hartford Life Insurance Company

00966