UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM DECOLOGERO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HARTFORD LIFE INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO: 11613 REK |

**HARTFORD LIFE INSURANCE COMPANY'S
REPLY BRIEF**

Defendant Hartford Life Insurance Company (hereinafter referred to as "Hartford") respectfully submits this Reply to Plaintiff's Opposition to Hartford's Motion for Dismissal or Summary Judgment pursuant to the applicable statutes of limitations and the contractual limitations of claims based upon the facts in Plaintiff's Complaint.

**FACTS**

Plaintiff, in his Opposition, asserts two arguments as to why the three-year limitations period set forth in the contract allegedly does not apply to him:

1. He is not bound by the contract's limitation period on lawsuits; and

2. The three-year limitations period is ambiguous, so the contractual limitations period should be ignored.

1.   **<u>Mr. Decologero is Bound By the Terms and Conditions of the Policy</u>**

No decisional authority could be found supporting Plaintiff's citeless assertions that (1) he is a third party beneficiary under the group benefits plan, or (2) as this alleged third party beneficiary he is not subject to a limitations period provided in a policy under a group benefits plan.  To the contrary, ample caselaw exists holding that participants of a group plan are subject to the limitations periods set forth in group disability policies.

Mr. Decologero admits that even if he were considered a third party beneficiary, "Plaintiff is governed by the substance of the policy regarding the procedures and benefits conferred." [<u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss/Motion for Summary Judgment, p. 3].  "Procedures" include the steps that claimants must take to enforce their rights.  <u>Black's Law Dictionary</u> (Procedural Law and Procedure) (5th ed. 1979).  Having accepted Hartford's <u>Statement of Material Facts</u>, which includes the contract language that a "Legal action cannot be taken against us . . . after 3 years following the date that proof of loss is due" [<u>See</u> CLAIM PROVISIONS, Form SRP-1311 V (Cont.)(5062), p. 26] and, having agreed that regardless of his position in the contract, Mr. Decologero is governed by the substance and procedures of the Policy at issue (hereinafter referred to as the "Policy"), Mr. Decologero is, therefore, bound by the procedural terms and conditions of the Policy.  The procedural terms and conditions of the Policy are the very substance of the Policy.  Those terms and conditions contain the specific rules that one needs to follow to enforce any sort of claim made under the Policy.  If the procedural terms and conditions of the Policy do not apply to Mr. Decologero as a plan participant, then the terms and conditions apply to no one.

**2.	The Three-Year Limitations Period is Not Ambiguous and May Not Be Ignored**

The parties agree that the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), does not in itself identify a statutory period of limitation applicable to a claim for benefits. As such, claims for benefits under ERISA plans are governed by the respective statutes of limitations prescribed for contract actions in the state where the claim is brought. Hartford, in its dispositive motion, relied on this very Court's decision in Alcorn v. Raytheon Co., 175 F. Supp. 2d 117 (D.Mass 2002). Alcorn is the most recent decision regarding enforcement of a group disability limitations provision, and Alcorn is in line with the most recent regulation on point, 29 U.S.C. § 1132. This regulation clearly states, as set forth in Alcorn, "contracting parties may agree upon shorter limitations period as long as it is reasonable." Id., 175 F.Supp. 2d at 121.

The fact pattern in the case at hand is substantially similar to that in Alcorn. In Alcorn, as in this case, the plaintiff was a participant in a group disability policy provided by her employer. Alcorn's policy contained the same limitations period for filing lawsuits: three years. Alcorn was injured and allegedly unable to work. Id. at 122. The insurer in Alcorn initially provided disability benefits under the group policy, just like Mr. Decologero in this case. Id. After an investigation, the insurance company determined that Alcorn was not eligible for disability benefits and terminated his disability benefits. Id. at 123. Alcorn filed his Complaint approximately 10 months after the three-year limitations period set forth in the group policy. Id. at 125. This Court properly dismissed Ms. Alcorn's lawsuit because Plaintiff's claim was not filed within the permissible time period. Id. at 124.

Mr. Decologero has attempted in his Opposition brief to cloud the issue by citing to different events that could have triggered the three-year limitation period in this case. However, like the plaintiff in <u>Alcorn</u>, Mr. Decologero filed his Complaint more than three years *after* each and every one of the events that could have triggered the accrual of his lawsuit. Put another way, even if Mr. Decologero was confused as to which trigger date began to toll the limitations period, he failed to timely file his lawsuit under *any* of the three deadlines.

Ignoring the relevant facts at hand, Plaintiff has relied in his Opposition brief on what at first glance appears to be a decision that is at odds with <u>Alcorn</u> (<u>Skipper v. Claims Services International</u>, 213 F. Supp. 2d 4 (D.Mass 2002).) In <u>Skipper</u>, Judge Ponsor denied a motion for summary judgment by ruling that Mr. Skipper submitted his only proof of loss in 1989, when he *initially* applied for benefits, but no other proof of loss was required under Mr. Skipper's particular policy. <u>Id</u>. at 7. Further, the date that Mr. Skipper's benefits were terminated was not clear from the Record in that case. Based upon the limited facts presented to him, Judge Ponsor concluded that Mr. Skipper was precluded from bringing any legal action after 1991 when he was still receiving benefits. <u>Id</u>. Such a reading of the contractual provision at issue in that case was found by Judge Ponsor to be "absurd". <u>Id</u>. The language, "two years from the time written proof of loss is required to be given," *as applied to Mr. Skipper's matter*, may have been appropriate as Mr. Skipper had been receiving benefits before being cut-off *without notice of the time limitations on any potential claims*. More importantly, the time frame within which Mr. Skipper could file a lawsuit was ambiguous. Those facts are not present here in this lawsuit (nor were they present in the <u>Alcorn</u> case.) Those facts were relevant in Mr. Skipper's case because there was one construction of that policy which, if applied, would have meant that Mr. Skipper

timely filed his lawsuit.  Id.  Such is not the case here.  Mr. Decologero, *using any of the three possible triggering dates*, did not timely file his lawsuit.

While the Alcorn decision has been cited with approval by courts throughout the country, the Skipper decision has not been followed by a single court (except to distinguish it, which is appropriate here).  There are no other decisions that follow the Skipper decision.  On the other hand, Mr. Decologero's fact pattern closely follows the one presented in Alcorn, and is easily distinguishable from the facts presented in the Skipper case.   In fact, the First Circuit has addressed this issue and held that a letter that terminates disability benefits under a group disability plan *is* sufficient notice that the time for filing a lawsuit has begun to toll.  *See*, i.e., Sheckley v. Lincoln Nat'l Corporation of Employee Retirement Plan, 2004 U.S. Dist. LEXIS 25212 (D. Me. 2004) (Citing I.V. Servs. Of Am., Inc. v. Inn Dev. & Mgmt, Inc., 182 F.3d 51, 57 (1st Cir. 1999)) ("A 'technical defect' in a letter denying a claim under [an ERISA group disability policy] will not invalidate a contractual limitations period when the claimant knew that he had a cause of action within that period."] Id. at 18 - 20.  Here, Mr. Decologero has not suggested that he did not know that his disability benefits were terminated by the letter he received terminating his benefits.   To the contrary, Mr. Decologero retained counsel for his administrative appeal.   Mr. Decologero (and his attorney) knew very well that his appeal of the decision to terminate his disability benefits was denied.  The decision to his terminate benefits was upheld, and Mr. Decologero has never asserted that he was confused as to when his benefits were terminated.

If this Court were to ignore the Alcorn decision and apply the Skipper decision, despite the different fact patterns, then there would be no reasonable end to the limitations period for actions under the Policy:  a participant of the group plan would be able to sue for the termination

of disability benefits without regard to the express three-year limitations period set forth in the contract. Ignoring <u>Alcorn</u>, which has essentially the same facts as this case, and applying <u>Skipper</u>, which involves a different set of material facts, would defeat the purpose of allowing insurers to set a reasonable deadline after which lawsuits may not be filed.

Similar issues of alleged ambiguity regarding the point in time at which the contractual limitations period begins to run (and whether the claimant had received notice of the limitations period) were brought up and dismissed in cases in this Circuit where the Court granted similar motions to dismiss as applied to other group policy claims. <u>See</u>, i.e., <u>Sheckley v. Lincoln Nat'l Corporation of Employee Retirement Plan</u>, 2004 U.S. Dist. LEXIS 25212 (D. Me. 2004) (finding that ambiguity is not an essential issue by distinguishing the facts from the issues raised in <u>Skipper</u>) and <u>I.V. Servs. Of Am., Inc. v. Inn Dev. & Mgmt, Inc.</u>, 182 F.3d 51, 57 (1st Cir. 1999).

In <u>Skipper</u>, the limitations period would have expired despite the possibility that Mr. Skipper had *no* notice or any reason to consider the issue of time constraints while he was enjoying the disability benefits to which he was entitled. Unlike <u>Skipper</u>, Mr. Decologero had ample notice of the termination of his disability benefits when he was notified of the termination of his benefits. Mr. Decologero *knew* of the alleged breach when he received the letter that his disability benefits were terminated, and *at the very least,* he knew that his benefits were terminated because he was no longer receiving disability payments. Mr. Decologero received a letter terminating his benefits and a letter denying his appeal. However, even if Hartford had failed to issue a written response to his appeal, it is clear under common law decisional authority interpreting group disability policies across the country that a plaintiff has *constructive notice* of an actionable claim when the entity which is charged with administration of his claim fails to respond. <u>See</u>, i.e., <u>Meyer v. Berkshire Life Ins. Co.</u>, 128 F. Supp. 2d 831, 838 (D. Md. 2001)

(citing Cole v. Travelers Ins. Co., 208 F. Supp 2d 248, 259 (D. Conn. 2002)]. A final determination of Mr. Decologero's claim was sent to him in writing. The fact that his disability benefits were retroactively terminated on September 20, 2000, a little over a month after the initial proof of loss was due, does not affect the three-year period. The result of the administrative appeal process, which by the terms and conditions of the Policy is the final denial of Mr. Decologero's claim, was dated November 28, 2001. *That denial letter put Mr. Decologero on notice as to when his time to file a lawsuit began.* Every conceivable date for notice to Mr. Decologero put him well past the three-year limitation period set forth in the Policy, whether Plaintiff uses the initial proof of loss due date of June 26, 2000, the date of the termination letter of August 20, 2000 or Plaintiff's appeal letter of October 15, 2001, or the last possible triggering event (the final denial by Hartford of his appeal) of November 28, 2001. See the Hartford's *Memorandum of Law*, at pages 3 - 4. Clearly, even if Mr. Decologero was confused as to which date to use of these dates, he could have used the very latest date.

      a.      **Mr. Decologero Retained Counsel When His Benefits Were Terminated.**

The Court in Skipper noted that if the date for the final determination of Mr. Skipper's benefits was clear in a denial letter, or if Mr. Skipper had been represented by counsel at the time, he may have known that the time within which he could file a lawsuit had begun.

As early as October 15, 2001, Mr. Decologero had retained counsel. In fact, his attorney wrote his appeal letter. Id., at 3. If there was a question that Mr. Decologero had as to which date triggered the limitations period, counsel could have advised him. Or, if there was a question from his attorney, the attorney could have requested from the plan administrator the triggering date for the limitations period in any one of her several letters. Yet, neither counsel nor Mr.

Decologero seemed to question when or whether his disability benefits were terminated.  Neither seemed to be confused that the disability benefits were terminated, and that legal action was necessary.  The fact that Plaintiff retained counsel prior to October 15, 2001, and appealed the termination of his disability benefits through counsel, in and of itself is evidence that Mr. Decologero and his counsel knew that there was an alleged breach and that the limitations period was running.  Unlike <u>Skipper</u>, there was a clear date when Mr. Decologero knew he no longer had disability benefits.

       b. **<u>Under Federal Decisional Authority the Limitations Period Had Expired</u>.**

Irrespective of the *common sense* arguments in favor of finding that Mr. Decologero (and his counsel) knew very well when his disability benefits were denied (and, therefore, when the time for filing a suit began to run), the law on this issue is very clear.

In the absence of bad faith, active concealment, or fraud, courts across the nation have ruled that a plan administrator is under no duty to issue individualized unsolicited advice, extending beyond providing the claimant with access to the plan coverage, terms and conditions. <u>See</u>, <u>Watson v. Deaconess Waltham Hosp.</u>, 298 F.3d 102, 114-115 (1st Cir. 2002) (dismissing plaintiff's claim as barred by statute of limitations where the plan provider did not breach the terms of the plan by failing to notify the claimant of the availability of his benefits).  Here, Mr. Decologero's attorney requested and was provided with the Policy and plan documents *prior to* submitting his appeal of the decision to terminate his disability benefits.  Hartford cannot be held to a duty to provide special notice for the limitations period for every claimant whose benefits are terminated.  The final denial of benefits is the final decision as to benefits - - this is set forth in the Policy that was sent to Mr. Decologero's attorney prior to counsel submitting Mr.

Decologero's appeal.  A plan administrator is not responsible to issue a separate letter to every claimant advising each one, without the claimant having asked, as to the date when their specific limitations period begins to toll.  This is especially true in cases like this one, where the Policy (which was provided to Mr. Decologero and his attorney over four years ago) clearly contains a three-year limitations period on lawsuits.  Mr. Decologero knew his disability benefits were terminated.  Even if Mr. Decologero was confused as to which date to apply (which would be a stretch of the imagination because he knew when his disability benefits were terminated), each of the three possible triggering dates, including the very latest date, put him well beyond the three-year limitations period in the Policy.  What Mr. Decologero does not address is this:  when does Mr. Decologero think the three-year limitation period started?   If the Court accepts Mr. Decologero's arguments, then there is no beginning to the limitations period.  By extension, there is no end to when a lawsuit could be filed.

The language of a group policy should be interpreted according to its plain meaning taken in context; policy language is ambiguous only "where an agreement's terms are *inconsistent on their face* or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." See Ayotte v. Matthew Thornton Health Plan, Inc., 2004 DNH 98 (D.N.H. 2004) quoting Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995) (granting Defendant's motion to dismiss) (Emphasis added.)  Here, the terms of the Policy are not ambiguous nor inconsistent on its face; the Policy unequivocally states that lawsuits must be commenced within three years.  There is no question here as to when the benefits were terminated.  The language of the Policy, taken in context, required Mr. Decologero to file his lawsuit within a three-year period.  Mr. Decologero failed to do so, and this case should properly be dismissed.

### c.     **Under Federal Common Law the Limitations Period Had Expired.**

There is ample decisional authority to support upholding the three-year limitations period in the Policy.  Yet, even if there was no decisional authority in the First Circuit or a prior case decided by this very Court that was directly on point (Alcorn), federal common law would apply.  Under federal common law, a cause of action under a group disability policy accrues either at the time the benefits actually are denied, or when the insured has reason to know that the claim has been denied.  *See*, Jackson v. Unum Life Ins. Co. of Am., 2003 U.S. Dist. LEXIS 3834 (D. Mich. 2003), quoting Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 649 (9th Cir. 2000).

Mr. Decologero's disability benefits were terminated on August 20, 2001.  That fact has not been disputed, nor has Mr. Decologero disputed that he knew his disability benefits were denied as of that date.  Using the date of termination of benefits as the latest possible triggering event, Mr. Decologero needed to file suit by August 20, 2004.  Yet this lawsuit was filed almost one year later.  The limitations of action period had expired.  Mr. Decologero's appeal was denied on November 28, 2001.  [Exhibits 2 and 7].  Using the denial of the appeal as the triggering event, Mr. Decologero needed to file his lawsuit by November 28, 2004.  Suit was filed over eight months after that limitations period had expired.

Just like the plaintiff in Alcorn, Mr. Decologero had stopped receiving benefits, had access to counsel, appealed the decision of the insurance company, and received notice of a final denial of benefits, all more than three years before filing this lawsuit.  Just like the plaintiff in Alcorn, Mr. Decologero had ample opportunities over the years to file a timely lawsuit.  Instead, he and his counsel decided to wait until August 1, 2005.  August 1, 2005 was approximately

four years after the termination of Mr. Decologero's long-term disability benefits.  August 1, 2005 also was more than three years and eight months after the final denial of the appeal of the termination of Mr. Decologero's disability benefits.

This very Court, *after* the Skipper case was decided, already decided the identical issue presented here in the Alcorn case.  The validity of the three-year limitations of action period was ruled upon in Alcorn, and has since been relied upon in the January 11, 2006 revision of the ERISA's enforcement provision, 29 U.S.C. § 1132.  Courts nationwide also have agreed that in a group policy context, as with other types of contractual arrangements, the parties may agree upon a shorter limitations period, so long as the period is not unreasonably short.  *See* Jackson v. Unum Life Ins. Co. of Am., 2003 U.S. Dist. LEXIS 3834 (D. Mich. 2003) (upholding the three years limitation period as a reasonable time frame) quoting Wilkins v. Hartford Life & Accident Ins. Co., 299 F.3d 945, 948 (8th Cir. 2002); Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301, 1303 (11th Cir. 1998); Hembree v. Provident Life & Accident ins. Co., 127 F. Supp.2d 1265, 1269 (N.D. Ga. 2000); Allen v. Unionmutual Stock Life Ins. Co. of Am., 989 F. Supp. 961, 965 (S.D. Ohio 1997).]  The issue is not ambiguous.  As a matter of law, a three-year limitation period is not ambiguous, it is not unreasonably short, and it may not be ignored.   As such, Mr. Decologero's Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, Hartford's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12 (b)(6) and, or in the alternative, Hartford's Motion for Summary Judgment, should be granted.

*WHEREFORE*, Hartford respectfully requests that this Honorable Court grant its motion and dismiss Mr. Decologero's Complaint as the three-year limitation of action period contained within the Policy precludes Plaintiff's recovery in this action because he failed to file his lawsuit against within three years of: 1) August 15, 2000, the date the initial proof of loss was filed by Plaintiff; 2) August 20, 2001, the date Plaintiff's disability benefits were terminated; 3) September 20, 2000, the date used to retroactively terminate the Plaintiff's benefits; and/or

4) November 28, 2001, the date Plaintiff's appeal was denied.

        Defendant,

        **Hartford Life Insurance Company,**

        By Its Attorneys,


        /s/James J. Ciapciak_____
        James J. Ciapciak, BBO #: 552328
        **CIAPCIAK & ASSOCIATES, P.C.**
        99 Access Road
        Norwood, MA 02062
        Tel: (781) 255-7401
        Fax: (781) 255-7401


## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that on March 2, 2006, I contacted Plaintiff's counsel and we conferred and attempted in good faith to resolve or narrow the issues pursuant to L.R. 7.1(A)(2).

        /s/James J. Ciapciak_____

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served upon Counsel of Record on March 2, 2006.

        /s/James J. Ciapciak_____
        James J. Ciapciak