UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
)
WILLIAM DECOLOGERO,                    )
      Plaintiff                            )
                                         )
                                         )     CIVIL ACTION
      v.                                  )     NO. 05-11613-REK
                                         )
                                         )
HARTFORD LIFE INSURANCE                )
COMPANY,                               )
      Defendant                            )
———————————————————————)

**Memorandum and Order**
May 17, 2006

**I.  Pending Matters**

Pending for decision are matters related to the following filing:

Defendant, Hartford Life Insurance Company's, Motion to Dismiss/Motion for

Summary Judgment (Docket No. 10, filed December 16, 2005).


**II.  Factual Background and Procedural History**

This case is brought pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001 et seq. (2004), and involves a claim to recover benefits allegedly

due under an employee benefit plan ("Plan").

On May 17, 2000, the plaintiff, William Decologero, was injured at work.

(Docket No. 1 at 2.)  On May 30, 2000, the plaintiff applied for total disability benefits because he

had allegedly been unable to work since the date of his injury.  (Docket No. 12, Exh. 3.)  On June

26, 2000, the plaintiff's treating physician submitted an Attending Physician's Statement of Disability to Hartford Life Insurance Company ("Hartford Life") on behalf of the plaintiff. (Docket No. 12, Exh. 4.)  Hartford Life is the Plan Administrator and underwriter for the disability insurance policy held by the Trustees of the Educational Profession of America Group Insurance Trust ("Trustees"), of which the plaintiff's employer, Tony D. Italian Steak House, is a member and thus a policyholder.  (Docket No. 1 at 1-2.)  On August 16, 2000, Hartford Life notified the plaintiff that his claim for disability benefits was approved.  (<u>Id.</u> at 2.)

On August 20, 2001, approximately one year after the plaintiff began receiving benefits, Hartford Life notified the plaintiff that his claim was being retroactively terminated, effective September 21, 2000.  (<u>Id.</u>)  On October 15, 2001, the plaintiff appealed this decision, and, on November 28, 2001, Hartford Life denied the plaintiff's appeal.  (<u>Id.</u>)  More than three and a half years later, on August 2, 2005, the plaintiff filed the instant suit against the defendant. (Docket No. 1.)  The plaintiff brings two counts against the defendant, alleging two different types of ERISA violations.  (<u>Id.</u>)  The plaintiff demands judgment against the defendant, specific performance, damages, attorneys' fees, costs, interest, and any and all other relief available that is deemed meet and just by the court.  (<u>Id.</u>)

On October 12, 2005, the defendant filed its answer to the plaintiff's complaint, denying the plaintiff's allegations and raising fourteen affirmative defenses.  (Docket No. 2.)  On December 16, 2005, the defendant filed Hartford Life Insurance Company's Motion to Stay Discovery Pending a Ruling on the Motion to Dismiss/Motion for Summary Judgment (Docket No. 9) and Defendant, Hartford Life Insurance Company's, Motion to Dismiss/Motion for Summary Judgment (Docket No. 10).  On December 21, 2005, the defendant filed a counterclaim

against the plaintiff alleging that since the defendant paid benefits to the plaintiff after the date that

it terminated the plaintiff's claim, an overpayment of $31,000 was paid to the plaintiff and to date,

the plaintiff has failed to reimburse the defendant for the alleged overpayment.  (Docket No. 14.)

The defendant/plaintiff-in-counterclaim brings three counts against the plaintiff/defendant-in-

counterclaim: (i) breach of contract; (ii) conversion; and (iii) unjust enrichment.  (Id.)  The

defendant requests the amount of the overpayment as well as attorneys' fees and costs, and any

other such relief that the court deems just and proper.  (Id. at 6-7.)

On January 10, 2006, the plaintiff/defendant-in-counterclaim filed both his answer

(Docket No. 15) and his amended answer (Docket No. 16), which raised five affirmative defenses

to the defendant/plaintiff-in-counterclaim's counterclaim.  On January 20, 2006, the plaintiff filed

his opposition to the defendant's motion to dismiss/motion for summary judgment.  (Docket No.

17.)  On January 25, 2006, the defendant filed Defendant, Hartford Life Insurance Company's

Assented To Motion for Leave to File Defendant's Reply Brief to Plaintiff's Opposition to

Dismiss/Motion for Summary Judgment (Docket No. 19), and I allowed that motion on February

3, 2006.  On February 8, 2006, I allowed the defendant's Motion to Stay Discovery Pending a

Ruling on the Motion to Dismiss/Motion for Summary Judgment.  On March 2, 2006, the

defendant filed its reply to the plaintiff's opposition.  (Docket No. 20.)

## III.  Analysis

### A. Introduction

The defendant has filed a single motion seeking alternative forms of relief.  The

defendant contends that by considering either the plaintiff's complaint alone or all of his combined

pleadings, the plaintiff does not make out a claim against the defendant.

I will consider the defendant's motion as two separate motions: (i) first, as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (ii) alternatively, as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. I will first consider the defendant's motion as a motion to dismiss, looking only at the allegations referenced, incorporated in, and alleged within the plaintiff's complaint. If I find that I cannot grant the defendant's motion to dismiss, I will then analyze the defendant's motion as a motion for summary judgment.

## B. Motion to Dismiss

### 1. The Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:

> Every defense, in law or fact, to a claim for relief in any pleading...shall be asserted in the responsive pleading... if one is required, except that the following defenses may at the option of the pleader be made by motion:... (6) failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).

Rule 12(b) requires that the grounds for dismissal must be clear on the face of the pleadings alone. See Fed. R. Civ. P. 12(b) (stating that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). A court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

4

Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004).  Thus, a

court "can dismiss for failure to state a claim only if it clearly appears, according to the facts

alleged, that the plaintiff cannot recover on any viable theory."  In re New England Mut. Life Ins.

Co. Sales Practices Litigation, 236 F. Supp.2d 69, 73 (D. Mass. 2002).  A court "must accept all

well pleaded factual allegations" in the complaint "as true and must give plaintiff the benefit of all

reasonable inferences."  Id.  All ambiguities must be resolved in the light most favorable to the

non-moving party, here the plaintiff, with any doubt resolved in his behalf.  Klimas v. Intl. Tel.

and Tel. Corp., 297 F.Supp. 937, 938, n. 2 (D.R.I. 1969). Accordingly, the court must deny a

motion to dismiss if the allegations of the complaint permit relief to be granted on any theory,

even one not expressly stated therein.  Adams v. Bell, 711 F.2d 161, 187 (D.C. Cir. 1983).

      "In an appropriate case, an affirmative defense may be adjudicated on a motion to

dismiss for failure to state a claim."  In Re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16

(1st Cir. 2003).  Indeed, "[o]n a Rule 12(b)(6) motion, the court's inquiry sometimes may

encompass affirmative defenses.  Everything depends on the record.  As a general rule, a properly

raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts

establishing the defense are definitively ascertainable from the complaint and the other allowable

sources of information, and (ii) those facts suffice to establish the affirmative defense with

certitude."  Rodi v. Southern New England School of Law, 389 F.3d 5, 12 (1st Cir. 2004); see 5B

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)

(citing numerous cases considering affirmative defenses on motions to dismiss).  "Whether

denominated a motion to dismiss or a summary judgment motion, when a defendant raises an

affirmative defense that is obvious on the face of plaintiff's pleadings, and the court makes its

ruling based only on those pleadings, the motion is treated as a Rule 12(b)(6) motion to dismiss. Fudge v. Penthouse Intern., Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).

On a motion to dismiss, a court may sometimes also consider documents in addition to the complaint itself. In fact, Rule 10(c) of the Federal Rules of Civil Procedure considers documents attached to the complaint as part of the pleadings. See Fed. R. Civ. P. 10(c) (stating that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). Thus, "[i]n ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it," sometimes including documents referred to in the complaint but not annexed to it." Rodi, 389 F.3d at 12.

If the court considers matters "outside" the pleadings, however, this converts the motion to one for summary judgment under Rule 56. Puerto Rican-American Ins. Co. v. Benjamin Ship. Co., 829 F.2d 281, 285 (1st Cir. 1987). Rule 56 defines matters outside the pleadings as "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989). Notwithstanding, the court will not treat a motion to dismiss as a motion for summary judgment if the court is presented with, and considers documents extrinsic to, the complaint whose "authenticity...is not contested, and upon, which the plaintiff's complaint necessarily relies." See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (affirming district court's reliance on plan document in ERISA case, not attached to plaintiff's complaint, in ruling on motion to dismiss), superseded by statute, Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, as recognized in Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676 (9th Cir. 2006); see also

Fed. R. Civ. P. 12(b), (c).

In this case, the plaintiff's complaint explicitly refers to and relies on the policy that is the subject of the defendant's motion to dismiss. Thus, the policy, although not annexed to the plaintiff's complaint, is incorporated by reference into the plaintiff's complaint because (i) the counts within the complaint allege ERISA violations based on administration of the Plan; and (ii) the plaintiff quotes directly from the policy in the complaint. (See Docket No. 1 at 2 (quoting, among other provisions, maximum benefit period defined within policy).) Moreover, neither party disputes the authenticity of the policy's documents, which are attached to the defendant's motion as Exhibit 1. I can thus consider the policy and rule on the defendant's motion to dismiss without converting it into a summary judgment motion at this stage. See Biery v. The Boeing Co. Employee Health and Welfare Benefit Plan et al., No. C04-2467JLR, 2005 WL 1644354, at *3 (W.D. Wash. July 12, 2005) (considering Plan documents at motion to dismiss stage since plaintiff's claims were based on her membership in Plan and authenticity of Plan documents was undisputed).

### 2. The Merits

The defendant argues that the plaintiff's complaint must be dismissed because the complaint's ERISA counts are barred pursuant to the policy's three-year limitation period. (Docket No. 11 at 6.) The plaintiff makes two primary arguments as to why the defendant's motion should be denied. First, the plaintiff argues that he is not a contracting party, but a third party beneficiary of the policy and is therefore not bound by the contractual limitation period in the contract. (See Docket No. 18 at 2.) Second, the plaintiff alternatively argues that if he is found to be a participant of the Plan, the policy language fails to create a shorter limitation period

7

than the statutory limitation period.  (Id. at 4.)  In its reply, the defendant argues that "[n]o decisional authority could be found supporting [p]laintiff's citeless assertions that (1) he is a third party beneficiary under the group benefits plan, or (2) as this alleged third party beneficiary he is not subject to a limitations period provided in a policy under a group benefits plan.  To the contrary, ample caselaw exists holding that participants of a group plan are subject to the limitations periods set forth in group disability policies."  (Docket No. 20 at 2.)  The defendant also argues that the three-year limitation period is not ambiguous and may not be ignored.  (Id. at 3.)  I find that the policy's limitation period is reasonable and that as a Plan participant, the plaintiff is governed by that limitation period.

### a. Third Party Beneficiary Argument

The plaintiff claims that instead of being a participant of the Hartford Life Plan subject to the contractual limitation period, he is in fact a third party beneficiary of the Plan and is thus not subject to the contractual limitation period.  I find that the plaintiff is in fact a participant of the Hartford Life Plan and subject to a reasonable contractual limitation period.

For purposes of ERISA, a "participant" means "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization."  29 U.S.C. § 1002(7).  The term "beneficiary" means "a person **designated by a participant**, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8) (emphasis added).

In this case, the plaintiff was not designated by a participant but was himself the

8

employee enrolled in the Plan.  Moreover, the plaintiff did not state anywhere within his complaint that he was a third party beneficiary, but instead stated that he was an employee of the Policy holder, Tony D. Italian Steak House and, as such, was an "Eligible Person" under the Plan.  (See Docket No. 1 at 1-2.)  The Plan defines an "Eligible Person" as "Prior Covered Persons [persons covered under the Prior Policy on November 30, 1999], Members, Spouses, and Domestic Partners."  (Docket No. 12, Exh. 1 at 2.)  The only description from "Eligible Person" that fits the plaintiff is "member" or participant since he was neither a member of the previous policy (see Docket No. 1 at 1 (stating that plaintiff's policy was "effective December 1, 1999")) nor a beneficiary of an employee-wife or employee-domestic partner.  Thus, under the definitions of the ERISA statute, the plaintiff was in fact a participant of the Plan, not a beneficiary.

        As a participant of the Plan, the plaintiff was entitled to have a full and fair review of a denied claim, see 29 U.S.C. § 1133 (explaining safeguards and requirements of claims procedure for participants and beneficiaries), and was also allowed to "recover benefits due" and "to enforce his rights" under the Plan, 29 U.S.C. § 1132 (A)(1)(B) (stating that participant or beneficiary can bring civil action to "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").  After Hartford Life's review of his denied claim, the plaintiff sought to enforce his rights and "recover benefits due" by initiation of this suit.  It is clear that the plaintiff filed this suit based on his own participation in the Plan as opposed to another employee's participation.  In fact, plaintiffs in identical situations to the plaintiff here, who bring suit against their insurance Plans, are considered members or participants of the Plan, not third party beneficiaries.  See, e.g., Buffonge v. Prudential Ins. Co. of America, 426 F.3d 20, 27 (1st Cir.

2005) (noting that as "participant," plaintiff employed by policy holder of insurance plan where

insurance company was administrator, appropriately sought relief under ERISA statute); <u>Gannon</u>

v. <u>Metropolitan Life Ins. Co.</u>, 360 F.3d 211, 212 (1st Cir. 2004) (treating plaintiff as "participant"

in plan where her employer was policy holder of plan administered by insurance company).  Thus,

the plaintiff is a participant of the Plan, not the third party beneficiary he claims.

   Even if I were to assume, contrary to my finding, that the plaintiff is a third party

beneficiary, the plaintiff's argument still fails.

   A third party beneficiary is "[a] person who, though not a party to a contract,

stands to benefit from the contract's performance."  <u>Black's Law Dictionary</u> at 165 (8th ed.

2004).  Since an intended beneficiary's right is based on the contract between the promisor (party

who undertakes to do a thing in response to the interrogation of the other party) and the promisee

(one to whom the promise is made), it is measured by the terms of that contract and is generally

subject to any defenses and claims of the promisor against the promisee arising out of that

contract.  E. Allan Farnsworth, <u>Contracts</u> § 10.9 (3d ed. 1999).  Indeed, the beneficiary's right

under the contract rises no higher than the right of the promisee.  <u>Id.</u>  Thus, the beneficiary is also

vulnerable to defenses of the promisor that affect the enforceability of the promisor's agreement

with the promisee.  <u>Id.</u>

   In this case, the plaintiff would have become a third party beneficiary upon the

signing of the policy between Hartford Life (promisor) and the Trustees (promisee).  It is well

established that third party beneficiaries are subject to all of the terms of the contract to which

they are beneficiaries.  <u>See</u>, <u>e.g.</u>, <u>InterGen N.V.</u> v. <u>Grina</u>, 344 F.3d 134, 146 (1st Cir. 2003)

(stating that "[i]t is well settled that third-party beneficiary status does not allow the holder to

avoid the effect of otherwise enforceable contract provisions" and acknowledging that third party

beneficiary to contract containing arbitration clause can be subject to that clause); <u>E.I. DuPont de

Nemours and Co.</u> v. <u>Rhone Poulenc Fiber and Resin</u>, 269 F.3d 187, 195 (3rd Cir. 2001) (finding

that "third party beneficiary [theory]...is a recognized principle of contract or agency law").

   The plaintiff argues that he is governed "by the substance of the Policy regarding

the procedures and the benefits conferred but [is not governed by the limitation period provision

because] a limitations period is a matter of public policy which can be shortened...only by

consenting contracting parties." (<u>See</u> Docket No. 18 at 3.) The plaintiff is incorrect in

distinguishing these different portions of the policy. Limitation provisions affect the plaintiff's

rights as much as the other provisions by which the plaintiff admits he is governed. <u>See

Templeman</u> v. <u>Baudhuin Yacht Harbor, Inc.</u>, 608 F.2d 916, 917 (1st Cir. 1979) (noting that

"statutes of limitations involve similar policy principles [as deciding between choice of substantive

law] since they are one aspect of the parties' rights and liabilities"). Furthermore, even if

limitation provisions are considered a matter of public policy, as the plaintiff alleges, the plaintiff

certainly cannot argue successfully that the other policy provisions by which the plaintiff admits he

is governed are not also matters of public policy. It is thus unclear why the plaintiff believes he

may avoid only the contractual limitation provision within his policy. The plaintiff cannot succeed

by arguing that he is entitled to pick and choose the provisions that apply to him in a contract

because one is more favorable to him than another may be.

   The plaintiff also seems to argue that in general, "contracting parties should not be

able to reduce the time the law allows third party beneficiaries to bring actions." (Docket No. 18

at 4.) The plaintiff offers no support for his argument other than "[t]he legislature had good

reasons for granting the time it has for contract cases.  Plaintiff did not voluntarily choose and

agree to this reduction."  (Id.)  This argument is without merit since plans with reduced

contractual limitation periods have been routinely upheld by courts.  See, e.g., Sheckley v. Lincoln

National Corp. Employees' Retirement Plan et al., 366 F.Supp.2d 140, 147 (D. Me. 2005)

(upholding plan's contractual limitations period); McLaughlin v. UNUM Life Ins. Co. of Am.,

224 F.Supp.2d 283, 290-291 (D. Me. 2002) (noting that "[c]ourts have consistently found that

such contractual limitation provisions are legally enforceable and binding on claimants"); Alcorn

v. Raytheon Company, 175 F.Supp.2d 117, 122 (D. Mass. 2001) (upholding plan's three-year

contractual limitation period).

   "Sometimes the contract itself provides that the beneficiary's right will not be

subject to defenses that the promisor might have against the promisee."  Contracts § 10.9.  Here,

the policy does not state that the plaintiff is excused from any type of defenses that Hartford Life

may have against the Trustees.  Therefore, even if the plaintiff is considered a third party

beneficiary of the Plan, he is still subject to the limitation period defense that Hartford Life now

raises.

   In conclusion, I find that the plaintiff is a member of the Plan and, as a member of

that Plan, he is subject to all of the policy's provisions, including the three year limitation period.

### b. Ambiguity Argument

   The defendant argues that the three-year limitation period "precludes the Plaintiff's

recovery in this action because he failed to bring suit against Hartford within three years following

**any** of these key dates: 1)...the date the initial proof of loss was due; 2)...the date Hartford [Life]

terminated the Plaintiff's disability benefits; 3)...the date Hartford [Life] retroactively terminated

the Plaintiff's benefits; [or] 4)...the date Hartford [Life] denied the Plaintiff's appeal." (Docket No. 11 at 6) (emphasis in original.) The plaintiff argues that even if he is a member of the Plan, he is still not bound by the policy's limitation period because the policy language fails to create a shorter limitation period. (Docket No. 18 at 4.) In its reply, the defendant argues that the three-year contractual limitation period is not ambiguous and cannot be ignored. (Docket No. 20 at 3.) The plaintiff does not appear to argue that if he is a participant in the Plan, he is not subject to a reasonable contractual limitation period. Thus, the only issue is whether or not the contractual limitation provision is reasonable. I find that the policy's limitation period is reasonable and that it gave the plaintiff clear notice of when he could file suit, but the plaintiff failed to timely file suit.

Ordinarily, a statute of limitation of six years applies to a claim for benefits under an ERISA plan in Massachusetts. Alcorn, 175 F.Supp.2d at 120-121. Since ERISA itself does not contain a statute of limitation for suits to recover benefits, Massachusetts courts generally apply the Massachusetts six-year statute of limitation for contract actions. See id. (finding that in absence of federal standard, courts almost universally apply corresponding state law statute of limitation). In this case, the defendant introduced a contractual three-year limitation period in its insurance policy. The parties disagree whether the language within the limitation provision gives the plaintiff notice of the "trigger date" for the limitation period.

In this case, the claim provisions section of the Hartford Life disability insurance policy provides:

> **Notice of Claim:** The person who has the right to claim benefits (the claimant or beneficiary) must give us written notice of a claim **within 30 days after a covered loss begins**. If notice cannot be given within that time, it must be given as soon as reasonably possible. The notice should include the Insured Person's name and the Policy number. It should

be sent to our office in Hartford, Connecticut or given to our agent.

**Claims Forms:** When we receive the notice of claim, we will send forms to the claimant for giving us **proof of loss**. The forms will be sent within 15 days after we receive the notice of claim...

**Proof of Loss:** Proof of loss must be sent to us in writing **within 90 days** after:
a) the end of each month of our liability for periodic claims payment; **or**
b) the date of the loss for all other claims.
If the claimant is not able to send it within that time, it may be sent as soon as reasonably possible without affecting the claim....

**Time of Claim Payment:** We will pay any daily, weekly or monthly benefit due:
a) on a monthly basis, **after we receive the proof of loss**, while the loss and our liability continue; or
b) immediately after we receive the proof of loss following the end of our liability....

**Legal Actions:** Legal action **cannot** be taken against us:
a) before 60 days following the date proof of loss is sent to us;
b) **after 3 years following the date that proof of loss is due**.

(Docket No. 12, Exh. 1 at 25-26 (emphasis added).) The terms "covered loss" and "proof of loss" are not defined within the policy.

Although the term "proof of loss" is undefined within the policy and the limitation provision itself is poorly drafted, the plaintiff understood what was required of him for "proof of loss" since after his "loss" occurred on May 17, 2000, he filed a claim to indicate that he had a loss, received the "proof of loss" forms from Hartford Life, and then submitted his "proof of loss" through his treating physician on June 26, 2000. Although the plaintiff submitted his "proof of loss" on June 26, 2000, his "proof of loss" was not due until ninety days after the date of loss (see Docket No. 12, Exh. 1), or on August 15, 2000. Thus, the plaintiff should have filed suit by August 15, 2003, within three years of that date. The plaintiff failed to do so and instead filed suit

14

almost five years later in clear violation of the contractual limitation period. Thus, on its face, the plaintiff's complaint is not timely.

The plaintiff relies almost exclusively on Skipper, 213 F.Supp.2d 4 (D. Mass. 2004), in support of his argument that his suit is timely. In Skipper, the plaintiff had applied for and been receiving disability insurance benefits for approximately seven years. Id. at 6. In the seventh year of receiving benefits, the plaintiff received a letter from his insurance policy that his benefits were being discontinued. Id. The plaintiff appealed and his appeal was denied. Id. In December 1998, more than a year after his disability benefits had been discontinued, the plaintiff filed suit. Id. His suit was later dismissed without prejudice for failure to effect timely service of process. Id. After moving to Massachusetts, the plaintiff again filed suit in October 2001, exactly three years after receiving his final denial letter. Id. The defendants moved for summary judgment on all counts contending that the suit was barred by the two-year contractual limitation period. Id.

The court in Skipper found that "[t]o an ERISA beneficiary who has submitted his 'proof of loss,' has had his application for benefits approved, and has then been receiving benefits for a period of many years before being cut-off, [the language within the policy referring to the two-year contractual limitation period] is pure gobbledegook." Id. at 7. The court further noted that "there is _no_ indication anywhere in the policy of how the contractual limitations period might apply to disputes arising from claims for the cut-off of continuing benefits-such as the claim in this case that arose nearly eight years after the 'loss began.'" Id. at 8 (emphasis in original). The court concluded that "the issue...is what, if anything, the contract says that might cut off this plaintiff's right to sue. Given that the policy language offers nothing intelligible that is applicable to

15

Skipper's situation, defendants cannot rely on it as a basis for dismissal." <u>Id.</u> at 9.  The court

denied the defendants' motion for summary judgment and rendered the plaintiff's suit timely.  <u>Id.</u>

   The plaintiff argues that "[t]he triggering date for the contractual limitations

period...is ambiguous....Just as in the *Skipper* case, nothing in the Policy states when that date

fell."  (Docket No. 18 at 6.)  The plaintiff thus argues that "the statutory limitations period should

apply."  (<u>Id.</u>)  The plaintiff's argument misses the mark.  Although the <u>Skipper</u> court found that

the plaintiff's suit was timely because a plaintiff in Skipper's position could never have understood

the contractual language in the disability insurance policy, the plaintiff here is not in the same

position as the plaintiff in <u>Skipper</u>.  Skipper had been receiving benefits for approximately seven

years before receiving notice that his benefits were being terminated, and his proof of loss was

submitted seven years earlier.  Thus, when Skipper's benefits were discontinued, he was already

past his two-year limitation period for bringing suit.  This is not the situation here.

   It is important that <u>Skipper</u> differentiates between two situations that determine

how a court should approach a motion to dismiss or for summary judgment based on a

contractual limitation provision.  In the first situtation, if the plaintiff has been receiving benefits

for years and cannot follow the contractual limitation provision because the limitation period has

already passed, then the contract language is insufficient to serve as an unambiguous contractual

limitation provision and should instead be read in conjunction with other communication, such as

a letter or a notice, that is sent by the insurance company to the plaintiff.  If the extra

communication does not explicitly define the new contractual limitation period for the plaintiff,

then the plaintiff remains in ambiguity about when he can file suit and he is protected at whatever

time he finally decides to file suit.  If the communication explicitly states what the contractual

limitation period is, however, the plaintiff has been "offered...a hint on this crucial point" and put on notice. <u>Skipper</u>, 213 F.Supp.2d at 8. He must thus file his suit within that new, specified contractual limitation period in order for his suit to be considered timely. <u>See id.</u> at 8-9 (noting that defendants' correspondence with plaintiff "might easily have clarified" limitation issue if correspondence had informed plaintiff, who had been receiving benefits for years and who was past contractual limitation period while still receiving benefits, that defendants planned to terminate his right to sue).

In the second situation, if the plaintiff was not still receiving benefits after the contractual limitation period has passed, the ambiguity problem is not analogous to the first situation and "calculation of the timing is difficult, but....not...flatly impossible." <u>Id.</u> at 8. Unlike the first situation, in the second situation, the court can choose to inquire only into whether the language of the contract put the plaintiff on notice of when he could timely file suit, and not into whether the company also sent additional communication to put the plaintiff on notice about his right to sue. Indeed, it is not "absurd" to require that this type of plaintiff pay attention to the pending contractual limitation period and file his suit within that period.

In this case, the plaintiff received benefits for only one year before he received a notice that his claim for disability benefits was going to be retroactively terminated. With the help of an attorney, Cheri Crow, the plaintiff appealed this notice, and his appeal was denied on November 28, 2001. The plaintiff sought no further action until four years later on August 1, 2005, when he filed this complaint. The plaintiff in this case is thus facing the second situation and still subject to the time in the policy's limitation provision. Still, the plaintiff waited an additional two years after the policy's three-year limitation provision had run to file suit. If the

17

plaintiff in <u>Skipper</u> had tried to file suit during the two-year contractual limitation period, he would have had to bring suit while he was still receiving benefits. As noted in <u>Skipper</u>, this would have been an "absurd result." <u>Id.</u> at 7. The fact then that the plaintiff in <u>Skipper</u> was confused about when to file suit based on his "proof of loss" is understandable. Here, no such confusion could possibly exist for this plaintiff who had only received benefits for one year and who had retained counsel to launch an appeal of the retroactive termination of his benefits before the policy's limitation period had passed. No credible reason thus exists for the plaintiff to have been confused about the contractual limitation period.

        The integral problem here is that the plaintiff believes that <u>Skipper</u> holds that the contractual language within a disability insurance policy such as Hartford Life's is <u>per se</u> ambiguous. The plaintiff reads <u>Skipper</u> much too broadly. <u>Skipper</u> does not hold that all contractual language, such as the one used in the policy in that case and the policy in this case, is ambiguous. Rather, <u>Skipper</u> holds that the contractual limitation language leaves "a person like Skipper" or a person in the first situation described above, in the dark as to how to calculate the triggering date for the limitation period. <u>Id.</u> at 7. Indeed, the court notes in <u>Skipper</u> that "[h]ad the defendants denied disability benefits from the outset, 'after [plaintiff's] loss beg[an],'" the policy might be construed to require plaintiff to initiate suit within two years of his original submission of the required 'proof of loss.'" <u>Id.</u> at 8. This latter situation is analogous to Decologero's position because the plaintiff is still within the policy's limitation period when he receives notice that he can no longer receive benefits. The court in <u>Skipper</u> then proceeded to note that in this type of situation, "some ambiguity would have made calculation of the timing difficult, but at least it **would not have been flatly impossible.**" <u>Id.</u> (emphasis added). Thus, the

18

holding in <u>Skipper</u> does not support the plaintiff's argument that his instant suit is timely because the contractual limitation period is ambiguous as applied to him.

Even if I were to find that some ambiguity exists within the contractual limitation period language and I strictly construe this language against Hartford Life, <u>see</u> <u>Hughes</u> v. <u>Boston Mut. Life Ins. Co.</u>, 26 F.3d 264, 268 (1st Cir. 1994) (noting that "ambiguous terms should be strictly construed against the insurer" in interpretation of ERISA-regulated insurance plans), it was not impossible for the plaintiff to realize that his "proof of loss" was information that he sent to Hartford Life one year prior to receiving his notice of discontinuance of benefits or was, by some stretch, somehow associated with his appeals process. <u>Cf.</u> <u>Skipper</u>, 213 F.Supp.2d at 7 (noting that "no matter how scrupulously Skipper may have pored over the contract language, nothing would have told him when that date fell, for him").  The plaintiff could have filed within three years of either of those dates, even with the ambiguity that may have existed within the limitation language, and still have had an arguably timely suit.  Furthermore, any ambiguity about the plaintiff's "proof of loss" could also have been deciphered by the plaintiff's attorney, whom the plaintiff hired to handle his appeal.

Moreover, because the plaintiff was well within the contractual limitation period after receiving his notice of termination of benefits, Hartford Life was under no obligation to notify the plaintiff of the contractual limitation period with further correspondence.  <u>See</u> <u>Biery</u>, 2005 WL 1644354, at *4 (noting that defendant's failure to reference contractual time bar in correspondence with similarly situated plaintiff did not prevent court from applying Plan's two-year contractual limitation period).  It would be unfair then to require that Hartford Life defend against an action that has been brought well outside of its contractual limitation period.  <u>See</u>

19

Scheirer v. NMU Pension and Welfare Plan, 585 F.Supp. 76, 79 (S.D.N.Y. 1984) (finding that absent finding of unconscionability of contractual limitation provision, it would be anomalous for court to allow plaintiff to maintain action to recover benefit which was created by and existed solely because of regulations of Plan, while at same time deny effect to conditions those same regulations place upon receipt of that benefit).

Finally, it is well established that contracting parties may agree upon a shorter limitation period as long as it is reasonable. I.V. Services of America v. Inn Development & Management, 7 F.Supp.2d 79, 86 (D.Mass. 1998). Based on the foregoing analysis, I find that the policy's limitation period is reasonable, see Alcorn, 175 F.Supp.2d at 122 (finding insurance policy with similar language and three-year contractual limitation period reasonable), and that the plaintiff was governed by this policy but failed to timely file suit.

Because the plaintiff failed to timely file suit within the policy's limitation period and instead waited to file suit two years after the limitation period had passed, his suit is not timely. The Order below therefore grants the defendant's motion to dismiss.

## C. Motion for Summary Judgment

In view of the dismissal of the plaintiff's complaint, I will not address the defendant's motion for summary judgment.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant, Hartford Life Insurance Company's, Motion to Dismiss/Motion for

Summary Judgment (Docket No. 10) is ALLOWED.

        (2) The Clerk is directed to enter on a separate document a Final Judgment as

follows:

        For the reasons stated in the Memorandum and Order of this date, it is hereby

ORDERED:

        This case is closed.


                    ____/s/Robert E. Keeton_____
                       Robert E. Keeton
                 Senior United States District Judge